IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  13-cv-02331-WYD

JOANN COCOZZA,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

---

## ORDER

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits ["DIB"], disabled widow's benefits ["DWB"] and supplemental security income ["SSI"] under Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-433.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    <u>BACKGROUND</u>

Plaintiff first protectively applied for DIB on February 25, 2010, claiming an onset date of May 8, 2002.  (ECF No. 10, Administrative Record ["AR"] 205.)  Her application was denied on July 28, 2010 (*id.* 94-96), and Plaintiff failed to timely appeal this denial. On October 25, 2010, Plaintiff protectively filed her second application for DIB, as well as applications for DWB and SSI.  (*Id.* 157-81.)  She claimed that she became disabled beginning September 15, 2004.  (*Id.* 164, 169, 175.)  Plaintiff was 45 years old on her alleged onset date.

Plaintiff's application for SSI was denied on November 9, 2010.  (AR 97-100.) Her applications for SSI and DWB were denied on February 2, 2011.  (*Id.* 101–07.) Plaintiff filed a Request for Hearing (*id.* 208) which was held on August 12, 2011.  (*Id.* 115.)  Plaintiff testified at the hearing that she experienced constant pain in her back, numbness and tingling in her legs, falling once or twice per week, an inability to sit for a long time, and a need to change positions.  (*Id.* 38-40.)  She also testified that Crohn's disease caused her to be in the bathroom six to twelve times per day, and that she lost two to three pounds per week because she hardly ever ate.  (*Id.* 42.)  She reported debilitating migraines and neck pain that radiated down her arms.  (*Id.* 44-46.)  She said that her shoulder had been "terrible" since surgery and that she could not even wear a bra or lift her right hand over her head.  (*Id.* 48.)  Further, she testified that she felt fatigued due to her medication and depression (*id.* 42), and that medication only took the edge off of her pain.  (*Id.* 42-43.)  She said she was very depressed and that her concentration was terrible.  (*Id.* 50, 51.)

On December 20, 2011, the ALJ issued an unfavorable decision denying Plaintiff's claim for benefits under the Act.  (*Id.* 9-31.)  Specifically, in the sequential evaluation process required by law, the ALJ found at step one that Plaintiff met the insured status requirements of the Act through September 30, 2007.  (AR 15.)  He further found that Plaintiff engaged in substantial gainful activity between August 1, 2009, and August 31, 2009.  (*Id.* 15.)  However, because there had been continuous 12-month periods in which Plaintiff did not engage in substantial gainful activity, the ALJ proceeded through the sequential evaluation.  (*Id.* 16.)  Specifically, he found that Plaintiff did not engage in substantial gainful activity from September 15, 2004, her

alleged date of onset in her second application, to July 31, 2009 and from September 1, 2009 to the date of the decision. (*Id.*)

At step two, the ALJ found, through the date last insured, that Plaintiff had the following "severe" impairments: "Crohn's disease; degenerative disc disease; chronic obstructive pulmonary disease (COPD); and status post fall off a horse and fracture of the distal clavicle." (AR 17.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (*Id.* 18.)

The ALJ then addressed Plaintiff's residual functional capacity ["RFC"]. (AR 18-24.) He found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 401.1567(b) and 416.967(b) except she "is able to frequently balance and occasionally climb, stoop, kneel, crouch, and crawl." (*Id.* 18.) At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a retail sales clerk. (AR 25.) He thus concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 15, 2004, through the date of this decision." (*Id.*)

The Appeals Council denied Plaintiff's request for review (AR 1-7), making the ALJ's decision the final decision of the Commissioner.

Plaintiff argues that the ALJ's determination that she performed substantial gainful activity ["SGA"] from August 1, 2009 to August 31, 2009, is not supported by substantial evidence. Further, she argues that the ALJ erred in relying on that work to determine that Plaintiff could perform past relevant work. Plaintiff also contends that the ALJ failed to consider all of her impairments in the RFC, and that the ALJ erred in his assessment of the opinion of her treating physician's assistant ["PA"] regarding her

functional abilities.  Lastly, Plaintiff asserts that the ALJ erred in his determination of her subjective complaints and credibility.

II.    ANALYSIS

    A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).  However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'"  *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quotation omitted).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  Thus, I will not consider post-hoc arguments of the Commissioner.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

B.    The Merits of Plaintiff's Arguments

1.    The Retail Sales Clerk Position as SGA

Plaintiff first argues that the ALJ erred at step one in finding that she engaged in

SGA as a retail sales clerk from August 1 to 31, 2009.  The ALJ determined in that

regard that Plaintiff had earnings of $1,080.63 at that job, which exceeded the

substantial gainful activity amount of $980.00.  (AR 16.)  While Plaintiff concedes that

$980 per month in 2009 constituted SGA, she argues that the ALJ's decision is

erroneous based on the letter submitted to the Appeals Council from her supervisor, Mr.

Young, stating that Plaintiff's dates of employment were from August 1, 2009 to

September 8, 2009, and that her pay was $200.00 per week.  (AR 301.)  When these

dates are taken into consideration, Plaintiff's monthly earnings are $840.49 per month

($1080.63 ÷ 39 days = $193.96/week x 52 weeks ÷ 12 months = $840.49/month).  This

is below the SGA amount of $980.00 per month.

As noted above, the evidence from Mr. Young was submitted only to the Appeals

Council, not the ALJ, and was considered by the Appeals Council in declining to review

the decision of the ALJ.  (AR 1-6.)  Accordingly, it becomes part of the record that I

assess in evaluating the Commissioner's denial of benefits under the substantial

evidence standard.  *See also Martinez v. Astrue*, 389 F. App'x 866, 869 (10th Cir.

2010).  I find that this evidence is relevant probative evidence that should have been

considered as it may "upset[]" the ALJ's decision.  *Id.*[1]

---

[1] The Commissioner's argument that this letter would not upset the ALJ's decision because it does not appear on company letterhead and it is unaccompanied by official timesheets or any other indicia of reliability is without merit given the fact that the ALJ considered a letter from Mr. Young in the same form as this letter (*id.* 184).  *See Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985) (an ALJ cannot summarily reject "reports as based on inadequate findings when they are comparable to those reports the

I also note that in describing the retail sales clerk position, Plaintiff stated in her Disability Report-Adult Report that she worked from June 1, 2009 through July 18, 2009, six hours per day, five days per week earning $7.00 per hour.  (AR 208-217.) She also reported that she worked six hours per day, five days per week at $7.00 per hour in her Work History Report.  (*Id*. 226-231.)  The ALJ did not consider either of these reports.  Working six hours per day five days per week, or thirty hours per week at $7.00, is roughly consistent with Plaintiff's supervisor's statement that she earned $200.00 per week.  (30 x 7 = $210.00).  Earnings of $210.00 per week or an average of $910.00 per month ($210 x 52 ÷ 12 = $910.00) is below the applicable SGA level of $980.00 per month.   This also was not considered by the ALJ.  I find that a remand is required so that the ALJ can discuss this probative evidence that supports Plaintiff's position that the retail sales associate position was not SGA.  *See Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (an ALJ  must consider all significantly probative evidence).

I also find error with the ALJ's finding that Plaintiff's work as a retail sales clerk was not an unsuccessful work attempt.  (AR 16.)  As recognized by the Commissioner, if a claimant works three months or less, as here, then the work is considered an unsuccessful work attempt if the claimant stopped working because of her impairment or due to removal of special conditions which took into account her impairment and permitted her to work.  20 C.F.R. § 404.1574(c)(3).  The ALJ found in relevant part that "the evidence does not support a finding that this job ended due to the alleged

---

ALJ found sufficiently detailed". )

impairments. . . ." (AR 16.)  In so finding, the ALJ gave "little weight to the claimant's testimony and Mr. Young's statement about why the claimant left her retail sales clerk job" as he found their assertions "contradict each other." (*Id.*)

However, both Plaintiff and Mr. Young reported that Plaintiff had difficulty standing and performing this job. (*Id.* 184, 55.)  Further, Mr. Young's statement that she quit her job due to her spinal disorder is consistent with this as is Plaintiff's testimony that she could not perform the sitting and standing requirements of the job, as well as the lifting and ladder requirements of the position. (*Id.*)  While Plaintiff may have testified to additional difficulties that she had performing this job, this does not necessarily make the statements inconsistent.  Moreover, the ALJ cited no evidence in the record, and I found none, indicating that Plaintiff quit this job for any other reason other than her impairments.

The ALJ also found, however, that the contention Plaintiff stopped working due to her impairments is substantially inconsistent with Plaintiff's activities of daily living during that time frame, including riding horses, playing bingo, and serving as a full time caregiver for her ailing husband. (AR 16.)  However, the first reference to riding horses and playing bingo did not appear in the record until February and March of 2010. (*Id.* 825, 844, 917, 929.)  There is no evidence that Plaintiff was riding horses in August or September 2009 when she engaged in her work attempts.  Moreover, "sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).  As to the full-time care of her husband, the first reference in the record to this was in January 2010. (*Id.* 810.)  The ALJ did not elicit any evidence about what this care entailed, or whether it

entailed the type of activities that Plaintiff had trouble performing as a retail sales clerk. Accordingly, the ALJ's finding that Plaintiff's work as a retail sales clerk was not an unsuccessful work attempt is not supported by substantial evidence, and a remand is also required on this basis.

As Plaintiff notes, the determination by the ALJ that Plaintiff's work activity in August 2009 was SGA is of significant importance in this matter. The ALJ determined that Plaintiff had past relevant work of retail sales clerk based on this employment.  (AR 25.)  The ALJ made a determination at step four that Plaintiff could return to her past work as retail sales clerk and thus, she was not disabled.  (*Id.*) If this employment is not considered to be SGA, then it would not qualify as past relevant work and the step four analysis would not be supported by substantial evidence.  *See Jozefowicz v. Heckler*, 811 F.2d 1352, 1356-1358 (10th Cir. 1987).  This will also need to be reassessed on remand.

The Commissioner argues, however, that any error at step four is harmless because, had the ALJ gone on to step five, the medical-vocational guidelines (Grids), 20 C.F.R. Part 404, Subpart P, Appendix 2, would direct a finding that Plaintiff was not disabled.  In support of this argument, the Commissioner asserts that the postural limitations the ALJ assessed (i.e., "frequently balance and occasionally climb, stoop, kneel, crouch, and crawl") (AR 18), would not significantly reduce the occupational base or preclude reliance upon the Grids, as these limitations are consistent with light work.  I disagree. The Commissioner cites, for example, SSR 83-14, 1983 WL 31254, at *4-5. While that ruling notes that the ability to do light work "implies that the worker is able to do occasional bending of the stooping type"and that the inability to crawl has little effect

on the unskilled light occupational base, it does not address the other nonexertional impairments found by the ALJ.

Moreover, "an ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). These requirements have not been shown in this case. Finally, I find below that the ALJ erred in connection with the RFC and in other ways. These errors require a remand, and are not harmless error.[2]

2. <u>Whether the ALJ Erred in Assessing the RFC</u>

I next address Plaintiff's argument that the ALJ erred in connection with the RFC as he did not address all her impairments. I agree. The law is clear that an ALJ "must consider the combined effects of *all* medically determinable impairments, whether severe or not." *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013). Even if an ALJ finds impairments nonsevere at step two, that does not permit him to "simply disregard these apparent impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Id.* at 1068-69. Also, the ALJ must discuss in the RFC assessment "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."

---

[2] I also note that the Tenth Circuit has held that "to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943) and its progeny. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

SSR 96-8p, 1996 WL 374184, at *7.  The ALJ must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved.  *Id.*

In the case at hand, Plaintiff complained of fatigue (AR 42) which was documented in the medical record.  Indeed, the record identified fatigue, lethargy and sleepiness as side effects of Percocet and Levothyrozine, Plaintiff's thyroid replacement.  (AR 299, 508, 869-702.)  The Tenth Circuit has held that an ALJ errs when he fails to consider allegations of fatigue in the RFC.  *Clark v. Barnhart*, 64 F. App'x 688, 691-692 (10th Cir. 2003) (unpublished).

Plaintiff also testified to other side effects of her medication, such as depression, nausea, an impact on driving, dizziness and problems with balance that were not considered by the ALJ.  (AR 43, 50, 52, 57.)[3]  The record also indicated neck pain radiating down her arm due to a herniated disc and chronic headaches/migraines which were not addressed by the ALJ, either at step two of the sequential evaluation or in the RFC.  (*Id.* 44-46, 517, 299, 481-83, 951, 944, 945, 950-51, 953.)   Because these impairments were not properly considered, I find that a remand is also required on this basis.  *See Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009) ("'While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other

---

[3] Plaintiff testified that she did not go to a counselor or psychiatrist for her depression because she had no money and no insurance.  (*Id.* 50.)  She also testified that she had to stop taking Remicade due to her lack of money.  (*Id.* 43-44.)  This was not considered by the ALJ, and in fact the ALJ found at step two that Plaintiff's depression was not severe because she did not seek treatment.  (*Id.* 17.)  This was error, as an ALJ is required to consider the inability to afford treatment in assessing a claimant's symptoms. SSR 96-7p, 1996 WL 374186, *7-8; *Three v. Barnhart,* 353 F.3d 1185, 1191 n. 7 (10th Cir. 2003).  It was also error because lack of treatment is not a proper consideration in assessing the severity of the mental impairments at step two.  *Grotendurst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished).

impairments–be critical to the outcome of a claim'") (quoting SSR 96-8P, 1996 WL 374184, at *5).

Since I am remanding this case, I also direct the ALJ to expressly discuss the impact of Plaintiff's severe impairments on the RFC, as I am not convinced that the ALJ properly considered the impact of those impairments.  Thus, Plaintiff was diagnosed with COPD which the ALJ found to be severe, and he recognized that Plaintiff testified her symptoms included shortness of breath upon exertion.  (AR 19, *see also* 767, 769, 869.)  The ALJ does not discuss Ms. Cocozza's shortness of breath or asthmatic bronchitis (*id.* 804, 808) in assessing her RFC and in finding she is able to do light work.  Yet this may clearly impact the ability to do such work.  *See* 83-14, 1983 WL 31254, at *4 (light work requires "a person to be standing or walking most of the day").

Similarly, while the ALJ found that Plaintiff's Crohn's disease was a severe impairment, the ALJ failed to discuss how he considered this disease in assessing the RFC and failed to include any limitations related to the disease.  This is despite the fact that the record shows consistent treatment for this impairment with frequent flareups which involve chronic diarrhea, nausea, and abdominal pain.  (*See, e.g.*, AR at 808, 820.)[4]  Indeed, Plaintiff went to the emergency department in March 2010 as a result of

---

[4] These frequent flareups call into question the ALJ's finding that Plaintiff's Crohn's disease was controlled by medication.  Further, the record indicates that Plaintiff was having problems with her medications.  (*See, e.g., id.* 494—noting that Plaintiff had frequent flareups and recurrent symptoms after Prednisone tapered down, and that Plaintiff was on Remicade; 770—noting that Remicade had stopped being effective and Plaintiff switched to Humira which caused her to have side effects of increasing muscular cramps of the lower extremities and episodes of severe epigastric and peri-umbilical pain; 771-72—noting that Humira was not "doing the trick" and that Plaintiff continues to have problems with abdominal pain; also noting that Plaintiff had been on Pentasa, steroids and Remicade "but did not tolerate 6MP"; added Pentasa and a tapering dose of prednisone); 460—noting that Plaintiff felt worse since switching to Humira); 939-39 (noting that Plaintiff was gradually becoming intolerant to Remicade as every episode gives her significant side effects and that she had not really responded to Prednisone).

sharp and chronic abdominal pain resulting from her Crohn's disease. (*Id.* 836.)[5]  She also testified that she needs to go the bathroom six to twelve times a day, on a good day. (*Id.* 42.)  The ability to take frequent bathroom breaks certainly could impact a claimant's ability to perform work, and should have been considered by the ALJ.  *See Tremaine v. Colvin*, 2014 WL 3563280, at *3 (W.D. Wash. July 18, 2014) (finding ALJ's adverse credibility determination was not supported when "[a]lthough the ALJ cited evidence which showed that Ms. Tremaine retained some functionality, her analysis does not address the crux of Ms. Tremaine's allegations, which was that managing her Crohn's disease required frequent access to a bathroom and that the medications she required resulted in a cycle of significant fatigue for a few days every two weeks.").

Finally, I note that the ALJ did not conduct a function-by-function assessment of the seven strength demands before finding that Plaintiff can perform light work.  "[A] failure to first make a function-by-function assessment of the [claimant's] limitations or restrictions could result in the adjudicator overlooking some of [the claimant's] limitations or restrictions."  SSR 96-8p, 1996 WL 374184 at *3-*4.  Thus, the ALJ did not discuss how long Plaintiff an sit or stand at a time or how far she can walk.  He also did not identify whether she was able to reach in front or overhead.  I find this failure was significant in this case given Plaintiff's history of three back surgeries, including the lack of a full fusion in the third surgery, osteoarthritis, cervical spine x-rays showing "a lot of spasm in the cervical spine" and assessing C2 radiculopathy and severe cervicalgia (AR

---

[5] She also went to the hospital with these symptoms in September 2004 and May 2005.  (*Id.* 638-39, 686.)

947-48), COPD with shortness of breath, and Crohn's disease.  (AR 947-948.)[6]  This is particularly significant given the errors I find in rejecting PA Tim Lewis' functional restrictions, discussed in the next section.  On remand, the ALJ is directed to conduct this function-by-function assessment.

### 3.   The Weighing of the Medical Opinions

I next address Plaintiff's argument that the ALJ did not properly weigh the opinion of her treating PA Tim Lewis ["PA Lewis"].  PA Lewis opined in June 2011 that Plaintiff had significant physical limitations as a result of her medically determinable impairments such as an inability to lift any weight, stand more than an hour a day or sit more than an hour a day.  (AR 897-898.)  Thus, he opined that Plaintiff can never squat, crawl/kneel, or climb stairs/ladders, and had restrictive environmental factors due to COPD with asthma.  (Id. 898.)  Further, he opined that pain effects Plaintiff's ability to work and that she cannot reach and work above shoulder level.  (Id.)  PA Lewis noted as the basis for his opinion Plaintiff's "COPD/Emphysema & asthma, Lumbo-sacral OA ["osteoarthritis"]/DDD [degenerative disc disease]" status post 3 back surgeries, "bilateral radiculopathy", Crohn's Disease, and right shoulder OA secondary to trauma (presumably after her fall from a horse in June 2010 when she had a fractured clavicle requiring surgical repair).  (Id.)

The ALJ gave this opinion very little weight on several grounds.  First, he noted that PA Lewis is not an acceptable medical source.  (AR 23.)  Second, the ALJ found

---

[6] The ALJ identified the third operation as surgery to remove the pedicle screws from the prior lumbar fusion.  (Id. 21.)  The surgeon opined as to this surgery that there was not a full fusion at L4-5 and L5-S1 as there were some areas of more fibrous tissue than fully bony healing.  (Id. 417.)  The ALJ did not discuss this lack of fusion.

that PA Lewis' opinion that Plaintiff is unable to work for zero hours per day is highly inconsistent with her ability to ride horses on multiple occasions and engage in work activities such as retail sales clerk and waitress. (*Id.* 23-24.) Lastly, the ALJ stated that PA Lewis' opinion was inconsistent with his own contemporaneous treatment notes. (*Id.* 24.) I find that these reasons do not provide a substantial basis for rejecting PA Lewis' opinions.

First, while the ALJ is correct that Mr. Lewis, as a physician's assistant, is not an acceptable medical source, this does not provide a basis simply to reject his opinions. Instead, the Social Security Administration makes clear that "information from such sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06–03p, 2006 WL 2329939, at *6. Indeed, such opinions may, at times, even outweigh the opinion of an acceptable medical source. *Id.* ("Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion"). Here, there was no evidence from a treating or examining physician as to Plaintiff. Thus, PA Lewis' opinion as a treating provider was particularly significant.

Also, "[o]pinions from non-physicians . . should . . . be weighed by the ALJ according to the same factors applicable to opinions from acceptable medical sources."

*McDonald v. Astrue*, 492 F. App'x 875, 882 (10th Cir. 2012) (citing *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007)) This requires that their opinions be considered and weighed using the factors set out in 20 C.F.R. § 416.927(d). *Id.* The only factor that the ALJ used to weigh PA Lewis' opinion regarding Plaintiff's functional limitations is that it was not supported by his notes. (AR 24.) However, the Tenth Circuit has found that an "ALJ's apparent failure to consider any factor other than supportability makes the ALJ's reasoning insufficient." *Andersen v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009) (unpublished). *Anderson* noted that while the ALJ was "under no obligation to *explicitly discuss* each factor in the decision . . . the ALJ's cursory treatment" of the physician's opinions in that case did not satisfy the court that the ALJ considered all the relevant factors." *Id.* at 722-23. I find the same to be true here.

Moreover, PA Lewis' opinion was not necessarily inconsistent with his notes. He reported that Plaintiff had a "traumatic lumbar OA/DDD" (AR 854) after three back surgeries and documented frequent flareups of Crohn's disease with related symptoms, including abdominal pain, chronic diarrhea, and unexplained weight loss. (*Id.* 804-05, 867.) While he did not note specific symptoms from Plaintiff's back impairment, he did document "left shoulder/arm pain" and problems with the right shoulder. (*Id.* 869, 898.) Further, cervical spine x-rays revealed arthritic changes and muscle spasms (*id.* 947-948). It is not unreasonable to assume that a treating provider might assess functional limitations in regard to a person who has neck pain, degenerative disc disease and other back problems, who has undergone three back surgeries with a possible failed fusion, and who suffers from other serious impairments including Crohn's disease and COPD. Indeed, this is substantiated by the State agency physician whose opinion the

-15-

ALJ gave great weight who stated that "[t]he combination of the clmt's back and abd impairments would limit some exertional activities. . . ." (*Id.* 70.) This should have been considered by the ALJ.[7]   Moreover, if the ALJ felt the medical evidence from PA Lewis was inadequate to determine whether a disability exists, the ALJ should have contacted him.  See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1) (2001)).

Finally, I address the ALJ's finding that PA Lewis' opinion is "highly inconsistent with her ability to ride horses on multiple occasions and engage in work activities such as retail sales clerk and waitress." (AR 23-24.)  I note that, conversely, the ALJ gave "great weight" to the opinion of the state agency physician because it "is consistent with the claimant's ability to engage in work activity after the alleged disability onset date and with the claimant's relatively wide range of activities of daily living, including the ability to ride horses on multiple occasions." (*Id.* 24.)  I find error with this analysis.

I first address Plaintiff's work attempts.  The record shows that these were very short lived and that Plaintiff quit (or had problems with performance of the work) due to her impairments.  (*Id.* 54-56, 301.)  I found no evidence to the contrary in the record.  Thus, these work attempts do not provide support for the state agency physician's

---

[7] While the Commissioner argues that there was "no evidence that Plaintiff sought or required treatment for back pain, this is not correct.  Plaintiff underwent lumbar spine x-rays in April 2005 due to pain.  (*Id.* 592.)  The findings on x-ray were that osseous fusion probably had not occurred.  (*Id.*)  She also underwent a CT scan on September 26, 2007 which showed degenerative disc disease. (*Id.* 801.)  On April 24, 2009, Dr. Kazmi noted that Plaintiff has a history of low back pain since 2001.  (*Id.* 944.)  Moreover, Dr. Kazmi noted that cervical spine x-rays showed arthritic changes and muscle spasms, and reported a lot of spasm in the cervical spine from his neurologic examination.  (*Id.* 944.)  Finally, Plaintiff testified to continued pain in her lower back as well as numbness and tingling in her legs, resulting in falling and not being able to sit for very long.  (*Id.* 39-40.)

opinion or for rejecting PA Lewis' opinions.  If anything, these unsuccessful attempts to work provide support for PA Lewis' opinions, not detract from them.

As to the Plaintiff's activities of daily living, the ALJ gave no credibility to Plaintiffs' testimony about this, as he found that "the allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty". (*Id.* 20.)  This flies in the face of the requirement that an ALJ consider a claimant's activities of daily living in assessing credibility.  The very nature of daily activities is that they generally cannot be objectively verified, as it is the claimant that performs them and can testify to them. Under the ALJ's reasoning, testimony about activities of daily living could always be discounted by an ALJ on this basis.

The ALJ also stated that even if the daily activities are as limited as alleged, "it is difficult to attribute that degree of limitation to the claimant's medical condition, in light of the lack of supporting medical evidence." (AR. 20.)  However, as noted throughout this discussion, the medical record is extensive and documents ongoing problems that Plaintiff had that could support her complaints.  Thus, this finding of the ALJ is not supported by substantial evidence.  Finally, I find it was error for the ALJ to focus on the fact that Plaintiff rode horses on a few occasions (one of which notably appeared to involve a therapy horse) while disregarding the other evidence about limited daily activities.  An ALJ may not selectively apply the evidence.  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

Additionally as to the medical evidence, the ALJ gave no weight to the form dated November 21, 2011 filled out for the Colorado Department of Human Services because "the record contains no treatment records from this facility" and the author "did

not cite any pertinent objective medical evidence or clinical findings in support of the

opinion. . . ." (AR 24, referring to AR 953.)  The ALJ's statement that the record

contains no treatment records from the facility noted on the form is incorrect, as there

are numerous treatment records from the facility referenced by the ALJ (which is the

practice of PA Lewis).  (*See id.* 802.)  Further, the form identifies Plaintiff's disabilities as

severe Crohn's disease, COPD, muscle and nerve damage as well as chronic

migraines.  These diagnoses serve as the basis for the opinion that Plaintiff is unable to

work at any job, and are supported by the treatment notes from the facility.  The ALJ

should, on remand, thus reconsider the weight to be assigned this form.

4.   <u>The Credibility Determination</u>

Plaintiff's final argument is that the ALJ failed to assess Plaintiff's credibility in

accordance with applicable law.  "'Findings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings.'"  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations omitted).

I already found error in this case with the ALJ's assessment of Plaintiff's daily

activities.  Further, I found that the ALJ did not adequately assess the side-effects from

medications that Plaintiff testified to and which I described previously.  These errors

impact the credibility analysis and, alone, require a remand.  *See Lamberty v. Colvin*,

No. 13-4072-RDR, 2014 WL 1338757, at *5 (D. Kan. April 3, 2014) (finding that remand

was appropriate because the ALJ "relied too heavily upon plaintiff's daily and occasional

activities to support his conclusions and analysis" and "did not refer to or inquire in any

detail as to the side effects of plaintiff's medication" even though plaintiff took a large

number of medications and reported fatigue, sleepiness and disorientation because of medication).[8]

However, I also find an additional basis for remand—that the ALJ did not conduct a proper pain analysis. The record documents chronic abdominal pain from Plaintiff's Crohn's disease, as well as back pain and neck pain, as discussed previously. Indeed, a neurological examination (conducted due to Plaintiff's complaint of pain radiating up to the top of her head which Percocet did not help) revealed a lot of spasms in the cervical spine. (AR 947.) Further, Dr. Kazmi noted in that record that cervical spine-x-rays showed arthritic changes and muscle spasm. (*Id.*) This evidence provide objective medical evidence to support Plaintiff's complaints of pain. (*Id.*) Ultimately, the ALJ's RFC and credibility analysis is not adequate because he appeared to improperly pick and choose from the record those portions that would support a finding of non-disability rather than considering the record as a whole. *See Hardman v. Barnhart*, 632 F.3d 676, 681 (10th Cir. 2004).

III.   CONCLUSION

In conclusion, I find that this case must be reversed and remanded for further fact finding. The ALJ erred in finding at step one that Plaintiff's prior work activity as a retail sales clerk constituted substantial gainful activity. This means that the ALJ's reliance on that position to find that Plaintiff can perform past relevant work at step four is also not supported by substantial evidence. Further, I find that the ALJ erred in assessing

---

[8] Related to medications, I also find error with the ALJ's assertion that Dr. Kazmi's long discussion with Plaintiff regarding medications and side effects suggests Plaintiff was misusing her prescribed medications (AR 22). This represents no more than speculation on the part of the ALJ. Moreover, the ALJ ignored the fact that Plaintiff moved from Arizona where Dr. Kazmi was located to Colorado during this time period.

Plaintiff's RFC, weighing her treating provider's opinion and other medical evidence, and

in assessing credibility.  Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C.

§ 405(g).

Dated:  September 29, 2014

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge